## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KAREN L. CASALE, : | |
|     *Plaintiff* : | |
| : | |
| v. : | C.A. NO.: |
| : | |
| BANNISTER OPERATIONS : | |
| ASSOCIATES, LLC, d/b/a BANNISTER : | |
| CENTER FOR REHABILITATION & : | |
| HEALTH CARE, alias, : | **Jury Trial Demanded** |
|     *Defendant* : | |
| : | |

## COMPLAINT

### I.    Introduction

1.    This is an action brought by Plaintiff Karen L. Casale ("Plaintiff") against her former employer, Bannister Operations Associates, LLC, d/b/a Bannister Center for Rehabilitation & Health Care, alias ("Defendant"), seeking compensatory, liquidated, punitive, and treble damages, counsel fees, costs and other equitable relief arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*; and the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws §28-12-1, *et seq.* and §28-14-1, *et. seq.*

### II.    Parties

2.    Plaintiff is a resident of the village of North Scituate in the Town of Scituate, County of Providence, and State of Rhode Island, and at all times relevant to this action was an employee employed by Defendant in the State of Rhode Island.

3.    At all times relevant to this action, Plaintiff was an "employee" within the meaning of 29 U.S.C. §203(e)(1) of the FLSA and within the meaning of R.I. Gen. Laws §§28-12-2(5) and 28-14-1(2) of the RIPWA.

4. Defendant is a Domestic Limited Liability Company duly organized under the laws of Rhode Island and doing business in the State of Rhode Island, with a principal place of business located at 4770 White Plains Road in the Bronx, in New York City, State of New York, 10470.

5. Defendant conducts business within the State of Rhode Island at a place of business located at 135 Dodge Street, Providence, RI 02907.

### III.    Jurisdiction

6. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case pursuant to the provisions of 28 U.S.C. §1331 because Plaintiff asserts claims arising under federal law; specifically, the FLSA, 29 U.S.C. §201, *et seq.*

7. Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. §1367 as they arise out of the same case or controversy.

### IV.    Venue

8. Pursuant to the requirements set forth in 28 U.S.C. §1391, venue is proper in this Court insofar as Defendant is doing business in Rhode Island and therefore is deemed to reside in the District of Rhode Island. Moreover, a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in the District of Rhode Island.

### V.    Defendant's Liability

#### A.    FLSA Liability Allegations

9. At all times relevant to this action, Plaintiff was an "employee" employed by Defendant within the meaning of 29 U.S.C. §203(e)(1) of the FLSA as well as within the meaning of R.I. Gen. Laws §§ 28-12-2(5) and 28-14-1(2) of the RIPWA.

10. At all times relevant to this action, Defendant was Plaintiff's "employer" within the meaning of 29 U.S.C. §203(d) of the FLSA as well as within the meaning of R.I. Gen. Laws §§28-12-2(7) and 28-14-1(3) of the RIPWA.

11. At all times relevant to this action, Defendant was engaged in the operation of an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution. 29 U.S.C. §203(s)(1).

12. At all times relevant to this action, and during each workweek, Plaintiff, in her capacity as an employee employed by Defendant, was engaged in commerce or in the production of goods for commerce, or was employed in an enterprise engaged in commerce or in the production of goods for commerce.

## VI.   Material Facts

13. Defendant is a nursing care center that provides its patients with rehabilitative and nursing services.

14. On or about February of 2016, Plaintiff was recruited by Defendant's Regional Marketing Director for Admissions, Denise Romano ("Ms. Romano") to work for Defendant.

15. When Ms. Romano recruited Plaintiff, Ms. Romano informed Plaintiff that Plaintiff was her first choice because Plaintiff is respected and well-liked in her profession.

16. On or about March 12, 2016, Plaintiff received a job offer to work for Defendant as an Admissions Coordinator.

17. Plaintiff accepted Defendant's offer and began working for Defendant as an Admissions Coordinator on or about April 4, 2016.

18. As an Admissions Coordinator, Plaintiff's primary job duty was to coordinate Defendant's resident referral and approval process, which required Plaintiff to: (a) establish and maintain relationships with local hospitals, physicians and community organizations for the

purpose of generating consistent admissions to Defendant's facility; (b) generate a positive image for Defendant; (c) encourage word-of-mouth referrals to Defendant's facility; (d) communicate any special needs of Defendant's new residents to Defendant's staff to ensure a smooth transition; and (e) provide appointments for tours on Defendant's premises.

19. At all relevant times, Plaintiff was compensated by Defendant on a salary basis that was based upon a forty (40) hour workweek.

20. However, Plaintiff regularly worked in excess of forty (40) hours per workweek while employed by Defendant, with the exception of the timeframe during which Plaintiff was out of work and on medical leave, which was from August 15, 2016 through on or about October 1, 2016.

21. Specifically, Plaintiff regularly worked approximately between forty-two (42) and forty-five (45) hours each and every workweek throughout her employment with Defendant.

22. At all relevant times, Defendant paid Plaintiff a gross weekly salary of $1,240.00.

23. At all relevant times, Defendant regularly and routinely issued and continued to issue payroll checks to Plaintiff that did not include pay at a rate of one and one-half (1 ½) times the regular rate at which Plaintiff was employed for hours Plaintiff worked in excess of forty (40) in a workweek.

24. At all relevant times, Defendant provided Plaintiff with dental insurance, health insurance, and twenty (20) days of paid vacation per year.

25. Plaintiff's contribution for dental insurance and health insurance amounted to $58.46 each week, which Defendant automatically deducted from Plaintiff's weekly paycheck.

*Abrupt Termination*

26. On or about August 12, 2016, Plaintiff was diagnosed with Non-Hodgkin's Lymphoma.

27. On or about November 8, 2016, Plaintiff saw her job posted and advertised on Indeed.com, which is an internet website wherein employers can post positions for which they are hiring and wherein interested applicants can submit applications for said positions.

28. At noontime on or about November 8, 2016, Plaintiff attended a team meeting with her co-workers.

29. Neither the aforementioned job posting nor Plaintiff's future termination was discussed during this team meeting.

30. At around 2:00 p.m. on that same day, Plaintiff asked Defendant's Administrator, Michel Hefter ("Mr. Hefter") alias, what was happening with her job, and if she was being fired.

31. Then, Mr. Hefter left the immediate area and quickly returned with an employee from Defendant's Human Resources Department, Carol McKinsky ("Ms. McKinsky"), alias.

32. Mr. Hefter then told Plaintiff that she was fired.

33. Worried about the status of her health and dental insurance in light of being fired from her job while suffering from Non-Hodgkin's Lymphoma, Plaintiff asked Mr. Hefter and Ms. Mckinsky about the status of her health and dental benefits as well as about receiving payment for the vacation time that she had accrued but had not used.

34. Mr. Hefter responded by stating that he would send Plaintiff information about medical and dental benefits along with any payment for the vacation time that Plaintiff had accrued but had not used.

35. The very next day, on or about November 9, 2016, Defendant terminated Plaintiff's medical and dental benefits.

36. On or about November 16, 2016, Plaintiff received information relative to the process of electing to receive healthcare coverage through the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

37. As such, on or about November 16, 2016, Plaintiff paid for and obtained healthcare coverage through COBRA, which provided Plaintiff with healthcare coverage retroactive to the date that Defendant terminated her dental and health insurance—on or about November 9, 2016.

38. However, Defendant deducted $58.46 from Plaintiff's paycheck for medical and dental insurance for the November 6, 2016 through November 12, 2016 workweek despite the fact that Plaintiff had paid for and acquired healthcare coverage retroactive to on or about November 9, 2016 through COBRA.

39. Furthermore, Defendant failed to compensate Plaintiff with any of her unused vacation pay that she had accrued prior to her termination, which amounted to approximately $690.37, or 22.27 hours.

*Failure to Compensate Plaintiff for Overtime Hours Worked*

40. Both the FLSA and the RIPWA require employers to pay their employees at a rate not less than one and one-half (1 ½) times their regular rate of pay ("Overtime pay") for all hours worked in excess of forty (40) in any one (1) workweek.  29 U.S.C. §207(a)(1); R.I.G.L. §28-12-4.1.

41. At all times relevant to this action, Plaintiff was entitled to Overtime pay pursuant to the FLSA and the RIPWA as her primary work duties did not render her an exempt employee.

42. As alleged above, Plaintiff worked more than forty (40) hours per workweek in nearly every workweek during her employment with Defendant.

43. Nevertheless, as alleged above, Defendant willfully and repeatedly violated the FLSA and the RIPWA by employing Plaintiff for more than forty (40) hours in a workweek without compensating her at a rate not less than one and one-half (1 ½) times her regular rate of pay.

*Work Suffered or Permitted*

44. Defendant is liable for the payment of wages for all hours worked and all overtime hours worked that Plaintiff was "suffered or permitted to work" in any one workweek—regardless of whether the work was requested, authorized or needed—whenever Defendant knew or had constructive knowledge that the work was being performed.[1]

45. Defendant knew or had reason to believe that Plaintiff was performing overtime work for which she was not being compensated at a rate not less than one and one-half (1 ½) times the regular rate at which she was employed.

46. Accordingly, Defendant had constructive, if not actual, knowledge that Plaintiff regularly performed overtime work for which she was not compensated.[2]

47. Nevertheless, Defendant failed or refused to pay Plaintiff the compensation to which she was legally entitled for all overtime hours worked.[3]

*Failure to Compensate Plaintiff with Unused and Accrued Vacation Pay*

48. The RIPWA mandates that "any vacation pay accrued or awarded by" any "written or verbal agreement" between employers and employees "shall become wages and payable in full or on a prorated basis with all other due wages on the next regular payday for the employee" following the employee's separation from the employer's payroll. R.I.G.L. §28-14-4.

---

[1] As long as the employer knows or has reason to believe that its employee is continuing to work, that time is "work time," and the employee is entitled to the payment of wages from the employer for said time. *See* 29 C.F.R. § 785.11.

[2] An employer is said to have "constructive knowledge" of its employee's overtime work when it has reason to believe that its employee is working beyond his shift. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306 (11th Cir. 2007).

[3] Once an employer knows or has reason to know that an employee is working overtime, ***it cannot deny compensation even where the employee fails to claim overtime hours or the work was not requested.*** *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516 (2d Cir. 1998); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693 (E.D. Tex. 2007).

49. As described above, Plaintiff accrued approximately $690.37, or 22.27 hours, in unused vacation pay at the time she was terminated on or about November 8, 2016.

50. Following Plaintiff's termination, Defendant failed to compensate Plaintiff with any of Plaintiff's accrued and unused vacation pay.

*Unlawful Deduction*

51. The RIPWA forbids employers from deducting or withholding from the payment of wages owed to an employee "any monies not authorized by federal or state law[.]" R.I.G.L. §28-14-3.2.

52. As described above, Defendant deducted $58.46 from Plaintiff's paycheck for medical and dental insurance for the workweek spanning from November 6, 2016 through November 12, 2016.

53. Defendant's deduction violates the RIPWA because Plaintiff had paid for and acquired healthcare coverage through COBRA that was in effect beginning on the day that Defendant terminated Plaintiff's medical and health benefits—on or about November 9, 2016.

### VII.   Claims for Relief

54. Plaintiff incorporates the allegations in ¶¶1 through 53 above in each of the counts set forth below.

**Count One**
*Fair Labor Standards Act,*
*U.S.C. §201, et seq.*
*Failure to Compensate Plaintiff for Overtime Hours Worked*

55. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated the FLSA by failing to pay overtime wages as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to 29 U.S.C. § 216(b).

**Count Two**
*Rhode Island Payment of Wages Act,*
*R.I. Gen. Laws §28-12-1, et seq., and*
*R.I. Gen. Laws §28-14-1, et seq.*
*<u>Failure to Compensate Plaintiff for Overtime Hours Worked</u>*

56. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated the RIPWA by failing to pay overtime wages as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws §28-14-19.2.

**Count Three**
*Rhode Island Payment of Wages Act,*
*R.I. Gen. Laws §28-12-1, et seq., and*
*R.I. Gen. Laws §28-14-1, et seq.*
*<u>Failure to Compensate Plaintiff with Unused and Accrued Vacation Pay</u>*

57. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated the RIPWA by failing to pay Plaintiff her unused and accrued vacation pay as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws §28-14-19.2.

**Count Four**
*Rhode Island Payment of Wages Act,*
*R.I. Gen. Laws §28-12-1, et seq., and*
*R.I. Gen. Laws §28-14-1, et seq.*
*<u>Unlawful Deduction</u>*

58. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated the RIPWA by deducting from Plaintiff's paycheck $58.46 for medical and dental benefits during the November 6, 2016 through November 12, 2016 workweek in which Plaintiff had paid for and obtained healthcare coverage through COBRA retroactive to on or about November 9, 2016, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws §28-14-19.2 and R.I. Gen. Laws §28-14-3.2.

## VIII.  Prayers for Relief

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring that the acts and/or omissions of Defendant, including, but not limited to those complained of herein, are in violation of the FLSA and the RIPWA.

2. An injunction directing Defendant to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An award of unpaid wages and/or benefits.

4. An award of compensatory damages.

5. An award of punitive damages.

6. An award of liquidated damages pursuant to 29 U.S.C. §216(b).

7. An award of liquidated damages in an amount up to two (2) times the amount of wages and and/or benefits owed pursuant to R.I. Gen. Laws §28-14-19.2.

8. An award of reasonable attorney's fees and costs of litigation pursuant to 29 U.S.C. §216(b).

9. An award of reasonable attorney's fees and costs pursuant to R.I. Gen. Laws §§28-14-19.2.

10. An award of other appropriate equitable relief pursuant to 29 U.S.C. §216(b).

11. An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws §28-14-19.2.

12. An award of treble damages pursuant to R.I. Gen. Laws §28-14-3.2.

13. An award of such other and further relief as this Honorable Court deems just and proper.

## IX. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## X. Designation of Trial Counsel

Plaintiff hereby designates Richard A Sinapi, Esquire, as trial counsel.

> Plaintiff,
> Karen L. Casale
> By her attorneys,
> **SINAPI LAW ASSOCIATES, LTD.**

**Dated:  March 30, 2018**          /s/  **Richard A. Sinapi**, **Esq.**
                                    **/s/  Joshua D. Xavier, Esq.**
                                    **Richard A. Sinapi, Esq. (#2977)**
                                    **Joshua D. Xavier, Esq. (#9456)**
                                    2374 Post Road Suite 201
                                    Warwick, RI 02886
                                    Phone:  (401) 739-9690; FAX: (401) 739-9490
                                    Email: ras@sinapilaw.com
                                    Email: jdx@sinapilaw.com